UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| BRUCE PARKER, # 593090,<br>a/k/a BRUCE-X PARKER,<br><br>Plaintiff,<br><br>v.<br><br>MITCHELL GAINER, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:16-cv-1302<br><br>Honorable Gordon J. Quist |

_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises out of conditions of his confinement from July 13 through October 1, 2016, at the Oaks Correctional Facility. The defendants are Corrections Officers Mitchell Gainer, Arnold Mattis, and Patrick Roy.

Plaintiff alleges that:

- On July 13, 2016, Officer Gainer violated his Eighth and First Amendment rights when he operated electronic controls that caused plaintiff to suffer injuries when his left leg and foot became caught in a closing cell door.

- On October 1, 2016, Officer Roy violated his Eighth and First Amendment rights by operating the electronic controls that caused a cell door to hit plaintiff's elbow.

- On July 23, 2016, Officers Mattis and Gainer violated his First Amendment rights by conducting a retaliatory search of plaintiff's cell and Officer Gainer violated his First Amendment right of access to courts by destroying legal materials.

- On July 23, 2016, Officer Mattis wrote a false misconduct charge against plaintiff for destruction of state property in violation of his First Amendment rights.

- On October 1, 2016, Officer Roy wrote a false misconduct charge against plaintiff for insolence in violation of his First Amendment rights.

Plaintiff seeks an award of damages against defendants in their individual capacities.[1]

The matter is before the Court on defendants' motion for summary judgment. (ECF No. 84). Plaintiff opposes defendants' motion. (ECF No. 87). For the reasons set forth herein, I recommend that the Court grant defendants' motion for summary judgment in part and deny it in part. The Court should grant defendants' motion for summary judgment on plaintiff's First Amendment access to courts claim against Officer Gainer and on plaintiff's First and Eighth Amendment claims against Officer Roy based on his closing of the cell door on October 1, 2016. Defendants' motion should be denied on all other claims.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require

---

[1] All other claims have been dismissed. (ECF No. 67).

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting

*Matsushita*, 475 U.S. at 586). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

## Qualified Immunity

Defendants also argue that they are entitled to summary judgment on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

-4-

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' "  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood

that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 502-03 (2019). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). The burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Preliminary Matters

The February 16, 2018, report and recommendation advised plaintiff that his complaint and 2017 declaration would not be considered on summary judgment:

> Plaintiff's complaint is not properly verified. (ECF No. 1, PageID.10). Plaintiff has interjected the limitations that the allegations are made on information and belief. (*Id.*). "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment

-6-

motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).
Thus, plaintiff's complaint cannot be considered as his affidavit in
opposition to defendants' motion or in support of his own motion.

The declaration that plaintiff filed on March 31, 2017, (ECF No. 42) will
not be considered because it suffers from the same defect of being based
on information and belief.   Plaintiff was expressly advised of the
statutory requirements of 28 U.S.C. § 1746 (*see* ECF No. 35,
PageID.191-92), and plaintiff knows how to file a declaration under
penalty of perjury without including improper limitations (*see* ECF No.
46, PageID.228).

(ECF No. 57, PageID.290).  Plaintiff did not amend his complaint and he did not file

a corrected declaration.    Plaintiff's attempts to incorporate his complaint and

deficient declaration into his response to defendants' motion for summary judgment

(Plf. Decl. ¶¶ 13-237, ECF No. 87, PageID.503-07) are ineffectual.    Plaintiff's

September 14, 2018, declaration (ECF No. 87) and the declarations of prisoners

Brown, King, and Martinez Lopez (ECF No. 87-1) are made under penalty of perjury,

in accordance with the statutory requirements of 28 U.S.C. § 1746, and the facts

stated in the declarations are considered herein.

## Relevant Facts

Plaintiff was an inmate held in the custody of the Michigan Department of

Corrections (MDOC) at the Oaks Correctional Facility (ECF) during the period at

issue.   Corrections Officers Mitchell Gainer, Arnold Mattis, and Patrick Roy were

employed by the MDOC at ECF during the same period.   (Gainer Aff. ¶ 1, ECF No.

85-1, PageID.417; Mattis Aff. ¶ 1, ECF No. 85-2, PageID.447; Roy Aff. ¶ 2, ECF No.

85-4, PageID.485).

A.    July 13, 2016

Plaintiff was on loss of privilege sanction (LOP) from July 11, 2016, through August 10, 2016.  On July 13, 2016, Officer Gainer observed plaintiff loitering by the water fountain at the opposite end of the hallway from his cell.  Plaintiff became argumentative when he was informed that he was on LOP and he could not be out of his cell without permission.  Officer Gainer was standing next to Officer Austin "on the unit base" as plaintiff returned to his cell.  Unit cell doors at ECF can be closed electronically through use of a switchboard located inside the "housing unit bubble." Officer Gainer states that he did not enter the housing unit bubble and that he did not close the cell's door on plaintiff.  He states that he never threatened plaintiff or subjected him to verbal abuse and that his conduct and language towards plaintiff remained professional at all times, regardless of the situation.  (Gainer Aff. ¶¶ 4-10, PageID.418).

Plaintiff states that he had a conversation with Deputy Warden Ball on July 13, 2016, about Officer Gainer "threatening plaintiff and other inmates" in his housing unit.  (Plf. Decl. ¶ 15, PageID.504).  Plaintiff states that he also had an encounter later that day with Officer Gainer.  Officer Gainer asked plaintiff why he had "ratted him out" to the deputy warden.  Plaintiff did not respond.  Officer Gainer called plaintiff a "f___ing liar and indicated that he would have plaintiff "thrown in the hole or tasered." (*Id.* at ¶ 16, PageID.504).  As plaintiff was returning to his cell, Officer Gainer electronically closed the cell door on plaintiff's left leg.  (*Id.* at ¶¶ 16-17, PageID.504).  Prisoner Brown states that he saw plaintiff with his left leg and

ankle caught in the door and that he saw Officer Gainer operating the controls. (Brown Decl. ¶ 3, ECF No. 87-1, PageID.510).

Plaintiff states that, on July 20, 2016, he was examined by a nurse and that he was provided with unspecified pain medication and a seven-day bottom bunk detail. (Plf. Decl. ¶ 18, PageID.505).  The bottom bunk detail (ECF No. 1-1, PageID.15) is the only medical evidence presented.

On July 22, 2016, ECF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. 2016-07-2113-17A. (ECF No. 33-3, PageID.183).  This was a grievance against Officer Gainer complaining that, on July 13, 2016, he threatened to have plaintiff tasered and that he "manually" closed the cell door on plaintiff's left leg and foot.  (*Id.*).

B.    July 23, 2016

Corrections officers are required to conduct at least two random cell searches per shift.  (Gainer Aff. ¶ 11, PageID.419; ECF No. 85-1, PageID.425; Mattis Aff. ¶ 3, PageID.448; ECF No. 85-2, PageID.454).  On July 23, 2016, Officer Mattis conducted a search of plaintiff's cell.  He found legal paperwork that did not belong to plaintiff in violation of prison rules.  Officer Gainer assisted Officer Mattis in completing the search.    Officer Mattis issued plaintiff a Notice of Intent to Conduct an Administrative Hearing and a Contraband Removal Record for 53 pages of legal documents belonging to other prisoners.    At the hearing, the hearing officer determined that the documents belonged to inmates Holloway, Bullard, and Martin and the documents would be returned to those prisoners.  (Gainer Aff. ¶¶ 11-15,

PageID.419; Mattis Aff. ¶¶ 4-8, PageID.448; ECF No. 85-2, PageID.471-74).

On July 23, 2016, Officer Mattis also found a state-issued bed sheet that had been ripped and tied to the lower part of the cell ladder. Officer Mattis issued a Class II (minor) misconduct ticket against plaintiff the destruction of this property. Officer Mattis states that he would have taken the same action absent any protected conduct by plaintiff. Prisoner grievances are a daily occurrence. Plaintiff was found not guilty after his cellmate admitted that it was his bed sheet and he took responsibility for it. (ECF No. 1-1, PageID.13-14; Mattis Aff. ¶¶ 10-14, PageID.449; Plf. Decl. ¶ 22, PageID.506).

According to plaintiff, during the search of his cell on July 23, 2016, Officer Gainer destroyed "plaintiff's legal papers which were affidavits of witnesses in ongoing and future litigation which cannot be replicated as some of the affiants are deceased." (Plf. Decl. ¶ 19, PageID.505). Plaintiff states that he had a conversation with Officers Gainer and Mattis shortly after his cell was searched. Officer Mattis indicated that plaintiff had not yet learned his lesson. When plaintiff asked for clarification, Officer Gainer responded that plaintiff should not have filed a grievance against him. (*Id.* at ¶ 20, PageID.505).

C.   October 1, 2016

On October 1, 2016, Officer Roy observed plaintiff leaving his cell door open in violation of prison rules. Officer Roy entered the housing unit bubble and closed plaintiff's cell door on the control panel. It takes approximately six to eight seconds for a door to close electronically. (Roy Aff. ¶¶ 4-6, PageID.486; ECF No. 85-4,

PageID.489).  According to Officer Roy, plaintiff immediately reopened his cell, came into the hallway and yelled:  "Why do you keep closing my door, you f___ing bitch[?]" (*Id.* at ¶ 7, PageID.486).  Officer Roy wrote a Class II misconduct ticket against plaintiff for insolence.  He states that he would have taken the same action absent any protected conduct by plaintiff.  This misconduct ticket was dismissed "due to a clerical error" because Officer Roy mistyped the time of the incident.  (ECF No. 1-1, PageID.16-17; Roy Aff. ¶¶ 8-9, PageID.486; ECF No. 85-4, PageID.490).

Plaintiff states that, on October 1, 2016, he ran back into his cell in search of an inhaler because he was experiencing a minor asthma attack.  Plaintiff does not dispute that he left the cell door ajar.  When Officer Roy closed the cell door, it hit plaintiff's elbow.  (Plf. Decl. ¶ 23, PageID.506).  Plaintiff does not indicate which elbow was involved and there is no evidence that he suffered any injury.  (*Id.*).  He "went into the unit hallway and spoke directly to the officers in the control bubble" and inquired why he had been hit with the cell door.  (*Id.*).  Plaintiff states that he "requested a grievance" during this "hostile conversation" with Officer Roy.  (*Id.* at ¶ 25, PageID.506-07).  Officer Roy indicated that, if plaintiff filed a grievance, he would make sure that plaintiff's cell was constantly searched, weapons and dangerous contraband would be found, plaintiff would be placed in segregation, and all his property would be destroyed.  Officer Roy filed the misconduct charge for insolence against plaintiff and it was later dismissed.  (*Id.* at ¶¶ 24-26, PageID.506-07).

Prisoner King asserts that, on October 1, 2016, Officer Roy stated that he had charged plaintiff with misconduct and that he hoped that it would slow down plaintiff's grievance writing.  (King Decl. ¶ 3, ECF No. 87-1, PageID.511).  According to prisoner Martinez-Lopez, on the same date, Officer Roy told him not to write grievances or he would receive the same treatment as plaintiff.  In addition, Officer Roy indicated that he charged plaintiff with misconduct because he had filed a grievance against a coworker.  (Martinez-Lopez Decl. ¶ 3, ECF No. 87-1, PageID.513).

## Discussion

### I.    Eighth Amendment

The Eighth Amendment limits the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*

Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  The analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321). While the extent of an inmate's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

-13-

Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See Leary v. Livingston Cty.*, 528 F.3d 438, 445 (6th Cir. 2008). Negligent closing of a cell door is insufficient to support an Eighth Amendment claim. *See Ritchie v. Wickstrom*, 938 F.2d 689, 692 (6th Cir. 1991); *Spearman v. Fielding*, No. 2:15-cv-15, 2017 WL 990554, at *2 (W.D. Mich. Mar. 15, 2017) (collecting cases).

Plaintiff has presented evidence that there was no need for the application of force by Officer Gainer, that force was applied maliciously and sadistically to cause harm, and that he suffered injuries. Officer Gainer has presented evidence that he did not apply any force because he did not close plaintiff's cell door on July 13, 2016. Summary judgment is not appropriate under these circumstances. *See, e.g.*, *Turner v. Tackett*, No. 1:16-cv-7, 2017 WL 1047372, at *6 (W.D. Mich. Feb. 27, 2017) ("[A] genuine issue of material fact as to whether defendant Tackett was the officer in the bubble who operated the door . . . preclude[d] a grant of summary judgment in favor of defendant Tackett."); W*illiams v. Wade,* No. 1:07-cv-1226, 2009 WL 483213, at *5 (W.D. Mich. Feb. 25, 2009) (factual issues precluded summary judgment on Eighth Amendment claim based on the closing of a cell door causing injury).

-14-

Plaintiff concedes that, on October 1, 2016, his cell door was left open in violation of prison rules and he has offered no evidence that he suffered any injury from the door hitting his elbow.  I find that no reasonable trier of fact could find in plaintiff's favor on his Eighth Amendment claim against Officer Roy.

Defendants' motion for summary judgment should be granted on plaintiff's Eighth Amendment excessive force claim against Officer Roy and denied on his Eighth Amendment excessive force claims against Officer Gainer.

## II.    First Amendment

### A.    Access to Court

Officer Gainer is entitled to summary judgment on plaintiff's First Amendment access to courts claim.  "[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996) (requiring "actual injury" to a "nonfrivolous legal claim" to demonstrate denial of access to the courts); *see Christopher v. Harbury*, 536 U.S.403, 415 (2002) ("[T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").  Plaintiff's vague allusion to destruction of legal papers regarding unspecified ongoing and future litigation is not sufficient evidence of actual injury to withstand Officer Gainer's motion for summary judgment on this claim.

-15-

    B.    <u>Retaliation</u>

    In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X,* 175 F.3d at 394. "After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart a retaliation claim by showing that he or she would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).

    1.    Protected Conduct

    The parties did not present any developed arguments addressing the protected conduct element. Plaintiff appears to be claiming that his conversation with Deputy Warden Ball on July 13, 2016, was the protected conduct related to the July 2016 cell door incident. His July 22, 2016, grievance (Grievance No. 2016-07-2113-17A) is apparently the protected conduct claimed regarding the July 2016 cell search and misconduct ticket and the October 2016 cell door incident. His October 1, 2016, request for a grievance form is apparently the protected conduct claimed regarding the misconduct ticket issued on that date. Prisoners have a First Amendment right to file non-frivolous grievances and constitutional protection extends to a prisoner's expression of intent to file a non-frivolous grievance. *See Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018); *Robinson v. Stephan*, No. 1:18-cv-1166, 2018 WL 6444282,

-16-

at *2-3 (W.D. Mich. Dec. 10, 2018).  Defendants' brief contains no argument addressing the protected conduct element.  (Def. Brief, 9-15, ECF No. 85, PageID.404-10).

        2.     Adverse Action

An adverse action is one that would "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396; *see Maben*, 887 F.3d at 266.  "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).  "However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury.  This threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Maben*, 887 F.3d at 266 (citations and quotations omitted).

The parties did not present any developed arguments addressing the adverse action element.  Plaintiff claims five instances of retaliatory conduct:  (1) Officer Gainer's July 13, 2016, closing of the cell door on plaintiff's left leg and foot; (2) Officer Roy's October 1, 2016, closing of the cell door and hitting plaintiff's elbow; (3) the destruction of plaintiff's legal materials during the July 23, 2016, cell search conducted by Officers Mattis and Gainer; (4) Officer Mattis's July 23, 2016, Class II misconduct charge against plaintiff for destruction of property; and (5) Officer Roy's October 1, 2016, Class II misconduct charge against plaintiff for insolence.  Defendants offer no argument that closing a cell door on a prisoner is so *de minimis*

that it cannot satisfy the adverse action element. A cell search accompanied by the seizure or destruction of the prisoner's legal materials can satisfy the adverse action element. *See Bell v. Johnson*, 308 F.3d 594, 604-05 (6th Cir. 2002). The potential punishment for a Class II misconduct conviction is sufficient to establish the adverse action element. *See Maben*, 887 F.3d at 266-67.

> 3.      Causation

The causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d at 441. If the plaintiff carries his burden of showing that his protected conduct was a motivating factor in the adverse action, the burden shifts to the defendant to show that he or she would have taken the same action in the absence of protected activity. *Maben*, 887 F.3d at 262.

I find that plaintiff has not presented sufficient evidence that a reasonable trier of fact could find in his favor on the causation element of his retaliation claim based on Officer Roy's October 1, 2016, closing of the cell door. Plaintiff's protected conduct on that date of threatening to file a grievance came after, not before, the cell door hit his elbow. Where the adverse action precedes the protected conduct, the claim fails to satisfy the causation element. *See Reed-Bey v. Lewis*, No. 13-10168, 2017 WL 9471683, at *6 (E.D. Mich. Aug. 28, 2017). Further, "[s]ubstantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Plaintiff's July 2016 grievance against Officer Gainer

was too remote in time from the October 2016 door closing to establish the causation element. *See, e.g., Vaughn v. Robb*, No. 1:11-cv-323, 2012 WL 769481, at *4 (W.D. Mich. Feb. 17, 2012) (collecting cases).

Plaintiff's declaration, and the declarations of prisoners King and Martinez-Lopez, provide evidence on the other retaliation claims that each defendant's adverse action was motivated, at least in part, by plaintiff's protected conduct.

The burden shifted to defendants to demonstrate that they "would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d at 441-42. Although defendants state that they would have taken the same actions, they did not file a reply brief addressing the evidence that plaintiff filed in response to their motion for summary judgment. Defendants have done little more than deny plaintiff's allegations, and that "is not sufficient to meet their burden under Federal Rule of Civil Procedure 56 to show affirmatively that there is no genuine issue in dispute." *Thaddeus-X*, 175 F.3d at 399; *see also Maben*, 887 F.3d at 268 (quoting *Thaddeus-X*, 175 F.3d at 399). I find that genuine issues of material fact preclude granting summary judgment in favor of defendants on all plaintiff's retaliation claims other than his claim against Officer Roy based on closing the cell door.

## III.  Qualified Immunity

The first prong of qualified immunity analysis is whether the plaintiff has alleged facts and presented evidence showing that each defendant's conduct violated a constitutional right. *Thompson v. City of Lebanon, Tenn.*, 831 F.3d at 369-70. Defendants' argument is limited to the first prong of the qualified immunity

analysis.[2]  (Def. Brief, 19-20, ECF No. 85, PageID.414-15).  Defendants are entitled to summary judgment on plaintiff's First Amendment access to courts claim against Officer Gainer and on plaintiff's First and Eighth Amendment claims against Officer Roy based on his closing of the cell door for the reasons stated in sections I and II.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Court grant defendants' motion for summary judgment (ECF No. 84) in part and deny it in part.  The Court should grant defendants' motion for summary judgment on plaintiff's First Amendment access to courts claim against Officer Gainer and on plaintiff's First and Eighth Amendment claims against Officer Roy based on his closing of the cell door on October 1, 2016.  Defendants' motion should be denied on all other claims.


Dated:   July 31, 2019                    /s/  Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden,*

---

[2] Courts have discretion to decide which prong of the qualified immunity analysis should be addressed first, and they should avoid expending judicial resources on analysis of the other prong if it appears unnecessary.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Here, it would waste judicial resources to address the second prong of the qualified immunity analysis because it appears unnecessary and the parties did not provide arguments addressing the second prong.

*Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).